Belmont Lumber Company, Inc. v. Commissioner.
Belmont Lumber Co. v. Commissioner
Docket No. 30456.
United States Tax Court
T.C. Memo 1956-17; 1956 Tax Ct. Memo LEXIS 281; 15 T.C.M. (CCH) 88; T.C.M. (RIA) 56017; January 20, 1956
*281 Income: Sales: Unrecorded transactions. - Income from sales of real property was not recorded on accrual-basis taxpayer's books and not reported on his returns. Since contradictory evidence was absent, the Commissioner was held to have properly determined additional income from these sales for the taxable years. Business expenses: Allocation of accounting charges. - Accountant's bill to taxpayer, intended as the total fee for services rendered and to be rendered in several tax matters against taxpayer and other interested parties, failed to show an allocation of charges. The Commissioner was sustained in his allocation of the amount which represented an ordinary and necessary business expenditure of the taxpayer. E. O. Palermo, Esq., 1111 Wallace S. Building, Tampa, Fla., and H. H. Baskin, Jr., Esq., for the petitioner. Newman A. Townsend, Esq., and Hubert E. Kelly, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This is a related proceeding to those in Paul Haimovitz, Docket No. 15929, et al., decided by Memorandum Findings of Fact and Opinion filed this day [T.C. Memo. 1956-15]. Respondent determined deficiencies *282 in income taxes of petitioner as follows: Fiscal Year Ended
September 30
Deficiency
1944
$1,792.31
1945
1,696.21
1946
3,016.76 Petitioner has conceded all but two issues raised by its petition. The remaining questions are the correct profits realized by petitioner from sales of real estate during the fiscal years involved, and the propriety of respondent's disallowance of a $2,750 deduction for audit and legal expenses claimed in the fiscal year ended September 30, 1944. Findings of Fact Some of the facts have been stipulated and are hereby found. Petitioner is a Florida corporation organized on or about October 1, 1932. Its principal place of business is in Tampa, Florida. Its income and excess profits tax returns for each of the fiscal years ended September 30, 1944 through September 30, 1946, were prepared by a certified public accountant and were filed with the collector of internal revenue for the district of Florida. Each of these returns was filed on an accrual basis. In 1926 Ben Haimovitz, deceased, acquired the assets of a defunct lumber concern and engaged in the retail lumber and building materials business as a sole proprietorship until he *283 incorporated petitioner in 1932 to take over and operate the business. On or about October 6, 1932, Ben transferred the assets of the proprietary lumber concern to petitioner. Ben, joined by his wife, Lillian Haimovitz, deceased, also transferred by deed on or about the same date certain real estate consisting of the following: Englewood Subdivision Lots 1, 2, 3, 4, 5, 6, and 7 of Block 12 Lots 1, 3, 4, 5, 15, 16, 17, and 18 of Block 13 Campobello Subdivision Lot 4 of Block 5 Lots 8, 9, 10, and 11 of Block 6 Lots 8, 9, 10, and 11 of Block 12 Lots 1 and 2 of Block 17 Lots 2 and 3 of Block 19 Lot 1 of Block 20 Lot 11 of Block 24 Lots 7 and 8 of Block 34 Mount Carmel Subdivision Lot 1 of Block 1 Garry Town Subdivision Lots 9 and 12 of Block 13 Lot 8, Block 12, Campobello Subdivision, was sold to the First Born Church of Living God sometime prior to April 21, 1944. The south one-half of Lots 8 and 9, Block 6, Campobello Subdivision, was sold to Thomas Langston on or about March 26, 1945. During each of the fiscal years ended September 30, 1944 through September 30, 1946, petitioner made sales of real estate. These transactions were not recorded on petitioner's *284 books for any of the fiscal years in question. In addition, petitioner did not report any income from these transactions on its income tax returns. For the fiscal year ended September 30, 1944, petitioner realized a profit from the sale of real estate described as Lot 8, Block 12, Campobello Subdivision, as follows: Sale Price
Net Cost
Net Profit
$2,000.00
$619.00
$1,381.00 For the fiscal year ended September 30, 1945, petitioner realized a profit from the sale of real estate as follows: Cost Less
Sale
Depreciation Pre-
Property
Price
viously Allowed
Net Profit
South one-half, Lots 8 and 9, Block 6, Campo-
bello Subdivision
$1,800.00
$250.00
$1,550.00
Lot 10, Block 6, Campobello Subdivision
1,400.00
200.00
1,200.00
Lot 11, Block 6, Campobello Subdivision
1,500.00
200.00
1,300.00 In addition, petitioner realized profit of $262.50 on the sale of real estate described as the west one-half of Lot 11, Block 24, Campobello Subdivision, thereby making a total profit of $4,312.50 from the sale of real estate during the fiscal year ended September 30, 1945. For the fiscal year ended September 30, 1946, petitioner realized *285 a profit from the sale to Ben in August 1946 of corporate property described as a one-half interest in Lots 3 and 4, Block 19, Greenville Subdivision, as follows: Sale Price
Cost
Net Profit
$6,600.00
$900.00
$5,700.00 This last property was part of certain real estate conveyed to petitioner by Lillian, joined by her husband, by warranty deed dated June 11, 1945 and recorded on January 23, 1946. Petitioner's profits of $1,381, $4,312.50 and $5,700 are properly includible in its net income for the respective fiscal years ending September 30, 1944, 1945 and 1946. A certified public accountant was employed in 1943 by Ben, Lillian, and petitioner to represent them in pending income tax matters. At that time no notice of deficiency had been issued to any of these taxpayers. Each of them gave the accountant powers of attorney which he filed with the Bureau of Internal Revenue. During the latter part of 1943 or early part of 1944, after several letters had passed between Ben and the accountant, the latter tendered a bill for an accounting fee in the amount of $5,250. Of this amount, $250 represented a charge for service rendered to petitioner up to that time. *286 The balance of the bill, $5,000, did not represent charges for accounting services rendered up to that time, but instead was intended as a payment toward whatever the total fee might be for services to be rendered in any of the tax matters pending against Ben, Lillian, petitioner, and the Haimovitz interests in general. This was the first bill that the accountant had tendered. In its income tax return filed for the fiscal year ended September 30, 1944, petitioner claimed under Schedule K a deduction for audit and legal expense in the amount of $5,253. This deduction represented, to the extent of $5,000, the retainer fee charged by the accountant in connection with his employment by the Haimovitz interests. Respondent determined that of the deduction for audit and legal expenses claimed by petitioner, $2,500 of such amount was applicable to Ben and $250 was applicable to Lillian. Of the deduction claimed by petitioner in the amount of $5,253 for audit and legal expense, $2,750 was not an ordinary and necessary expenditure incurred in its business. Opinion As the case is presented, but two issues remain, one relating to respondent's determination of additional income from real *287 estate sales and the other to respondent's disallowance of a claimed expense deduction. With respect to the first issue, we have found the facts in conformity with respondent's determination. The sales were admittedly made by petitioner and the possible character of only two of the sales appears from the record. The sale in fiscal 1944 appears to be a mortgage transaction and one of the sales in fiscal 1945 appears to be an "Agreement for Deed," although referred to as a mortgage by petitioner's witness. Notwithstanding this incomplete record and its failure to request any findings of fact, petitioner suggests that all of its sales are governed by our decision in Nina J. Ennis, 17 T.C. 465. This is its only argument. The present record permits no such conclusion for it contains no evidence to disturb respondent's determination. And see Arthur E. Wood, 25 T.C. - (December 14, 1955). Respecting the second issue, the deficiency must also be sustained, this time on the testimony of petitioner's own witness. Petitioner paid a $5,000 retainer fee which was admittedly charged to cover an accountant's services with respect to Ben and Lillian as well as petitioner. No allocation *288 of charges was made by the accountant or petitioner and the evidence shows that the accountant was engaged in work on all Haimovitz interests as a result of his employment. Petitioner apparently questions only the right of respondent to make any allocation rather than the amount of the allocation made. Under these circumstances we must sustain respondent's determination. Ecco High Frequency Corp. v. Commissioner, (C.A. 2) 167 Fed. (2d) 583, certiorari denied 335 U.S. 825. Decision will be entered for the respondent.